1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              Case No. 1:23-cv-01282-JLT-CDB

12                   Plaintiff,             FINDINGS AND RECOMMENDATIONS TO
                                            GRANT PLAINTIFF'S MOTION FOR
13            v.                            DEFAULT JUDGMENT

14   JAVIER SALAZAR, JR., *et al.*,         (Doc. 24)

15                   Defendants.            ORDER DENYING AS MOOT
                                            DEFENDANTS' MOTION FOR EXTENSION
16                                          OF TIME

17                                          (Doc. 31)

18
                                            **21 DAY DEADLINE**
19

20

21

22         Pending before the Court is the motion by Plaintiff United States of America ("Plaintiff")

23   for default judgment against Defendants Javier Salazar, Jr., Javier Salazar, Sr., and Ricardo

24   Covarrubias (hereinafter collectively, "Defendants"), filed on April 12, 2024.  (Doc. 24).  No

25   Defendant filed an opposition to Plaintiff's motion and the deadline to do so has expired.  The

26   Court convened for hearing on the motion on May 22, 2024.  (Doc. 26).  Counsels Roshni Shikari

27   and Robert Fuentes appeared on behalf of Plaintiff.  (Doc. 25).  Defendants appeared on behalf of

28   themselves, and a non-party family member (Anna Covarrubias) also was present.  *Id.*  At the

1   Court's direction, on June 5, 2024, Plaintiff filed a supplemental briefing in support of the

2   pending motion for default judgment.  (Doc. 28).

3       Having considered the moving papers, the declarations and exhibits attached thereto, the

4   arguments and testimony presented at the hearing, as well as the Court's file, the Undersigned

5   issues the following findings and recommendations that Plaintiff's motion for default judgment

6   be GRANTED.

7   **Background**

8   **A. Plaintiff's Allegations**

9       Plaintiff brings this action to enforce the provisions of Title VIII of the Civil Rights Act of

10  1968, as amended, 42 U.S.C. §§ 3601, et seq. (the "Fair Housing Act" or "FHA"), on behalf of

11  Angela McGinnis ("McGinnis").  (Doc. 1 at ¶¶ 1-2) (citing 42 U.S.C. § 3612(o)).

12      Defendant Ricardo Covarrubias owns at least four residential rental properties, including a

13  single-family home located at 1916 South M Street in Bakersfield, California ("the Subject

14  Property").  *Id*. at ¶¶ 8, 10.  Defendants Salazar Sr. and his son, Salazar Jr., managed the Subject

15  Property for Defendant Covarrubias.  *Id*. at ¶¶ 9, 24.  Defendant Salazar Jr. performed

16  maintenance and repairs at the Subject Property.  *Id*.

17      In December 2018, McGinnis signed a lease and moved into the Subject Property with her

18  two minor children.  *Id*. at ¶ 11.  As part of her move, McGinnis paid a $700 security deposit,

19  bought $1,800 worth of new appliances, and purchased and installed $150 worth of hardware for

20  wall-mounting a television.  (Doc. 24-2 at ¶ 4).  From December 2018, through March 2019,

21  Defendant Salazar Jr. subjected McGinnis to discrimination on the basis of sex, including

22  unwelcome sexual harassment.  (Doc. 1 at ¶ 12).  Defendant Salazar Jr.'s harassment was

23  conducted in person, through phone calls, and via text messages.  *See* (Docs. 1 at ¶ 12; 24-1; 24-

24  2).  In one instance, Defendant Salazar Jr. told McGinnis "that he knows it is hard paying rent,

25  and that if she had sex with him he would not make her pay rent."  (Doc. 1 at ¶ 12).  At some

26  point, Defendant Salazar Jr. touched McGinnis' thigh and, on another occasion, grabbed her

27  genital area over her pants.  (Doc. 1 at ¶ 12).  Additionally, Defendant Salazar Jr. entered the

28

2

1  Subject Property unannounced and took digital photographs of printed pictures McGinnis had in

2  her house of herself and her daughter.  (Doc. 1 at ¶ 12).

3      Defendant Salazar Jr.'s actions were unsolicited by McGinnis.  (Docs. 1 at ¶ 13; 24-1; 24-

4  2).  McGinnis repeatedly opposed Defendant Salazar Jr.'s harassment and made it clear to him

5  that his actions were unwelcome.  (Docs. 1 at ¶ 13; 24-1 at 8, 20) ("you need to be professional

6  when you talk to me…I just find what you do a little bit creepy…I'm not ever going to have sex

7  with you or anything of that nature.").

8      On or around February 25, 2019, McGinnis reported Defendant Salazar Jr.'s harassment

9  to Defendant Salazar Sr.  (Doc. 1 at ¶ 14).  Defendant Salazar Sr. said he would address

10  Defendant Salazar Jr.'s behavior, but the harassment continued unabated.  *Id*.  On February 28,

11  2019, McGinnis called the gas utility company, Pacific Gas and Electric ("Pacific"), because she

12  smelled gas and suspected a gas leak at the Subject Property.  *Id*. at ¶ 17.  Pacific representatives

13  inspected the Subject Property and shut off the gas to McGinnis's unit.  *Id*.  Thereafter, Pacific

14  issued a hazard notice indicating that the gas connections to her heater and dryer were unsafe and

15  needed to be repaired by a licensed contractor before gas service could be restored.  *Id*.

16      McGinnis informed Defendant Salazar Jr. that her gas, and therefore her heat, had been

17  shut off by Pacific and that the gas line connections to the heater and dryer needed repairs.  *Id*. at

18  ¶ 18.  While Defendant Salazar Jr. examined the gas lines at the Subject Property, he continued to

19  make sexually harassing comments to McGinnis and "reached out to touch her."  *Id*.  McGinnis

20  told Defendant Salazar Jr. not to touch her, that he could not continue to speak to her in an

21  unprofessional manner, and told him that if he continued to behave inappropriately with her, she

22  was going to get a lawyer or report his conduct to the police.  *Id*.  Defendant Salazar Jr. told

23  McGinnis if "she was not going to be nice to him, he was not going to help her, or words to that

24  effect."  *Id*.

25      McGinnis continued to try to get Defendant Salazar Jr. to make repairs because she did

26  not know who else she could call for help.  *Id*. at ¶ 19.  McGinnis urged Defendant Salazar Jr. to

27  get a licensed contractor to address the issue when it became apparent that he was not equipped to

28  make the repairs.  *Id*.  Defendant Salazar Jr. continued to proposition McGinnis, saying things to

the effect of "why won't you be my wife" or "you should have sex with me." *Id*.  On or around

March 4, 2019, McGinnis texted Defendant Salazar Sr. "I can't have my kids here with no

heat…I don't want your son [Defendant Salazar Jr.] here call a licensed contractor." *Id*. at ¶ 20.

On or around March 29, 2019, the gas connections to the heater and dryer still had not

been repaired. *Id*. at ¶ 21.  In response, McGinnis and her minor children left the Subject

Property to stay with her father. *Id*.  On or around April 1, 2019, McGinnis moved most of her

belongings out of the Subject Property. *Id*. at ¶ 22.  McGinnis returned to the Subject Property on

or around April 2, 2019, to collect a few remaining items and to return her key. *Id*.  McGinnis

was unable to collect the last of her remaining items as Defendants had already changed the locks

and put a padlock on the fence. *Id*.

At some point, McGinnis contacted Defendant Salazar Jr. about Defendants returning her

security deposit. *Id*. at ¶ 23.  Defendant Salazar Jr. refused to mail the security deposit and told

McGinnis she would have to come to his house to get it. *Id*.  McGinnis declined to do so, "[n]ot

wanting any further interactions with [Defendant] Salazar Jr." *Id*.  McGinnis never received her

security deposit from Defendants. *Id*.

McGinnis declares Defendants' harassment and retaliation prevented her from enjoying

her home and she often avoided being home in an effort to avoid Defendant Salazar Jr.  (Doc. 24-

2 at ¶ 6).  McGinnis attests Defendants' harassment and retaliation caused her a significant

amount of stress, affected her sleep, strained her relationship, and diminished her personal life

and sense of safety. *Id*. at ¶¶ 7, 9-12.  McGinnis also claimed that when Defendant Salazar Jr.

"took pictures of the photographs I had put up of my daughter and myself, I felt guilt and shame

of having placed my daughter in a potentially unsafe situation. I also worried about how my

distress over the harassment would affect her." *Id*. at ¶ 8.

**B. Procedural History**

On or around October 28, 2019, McGinnis filed a fair housing complaint with the United

States Department of Housing and Urban Development ("HUD") alleging sex discrimination in

her rental of the Subject Property. *Id*. at ¶ 27.  The Secretary of HUD conducted and completed

an investigation of the complaint, and attempted conciliation without success. *Id*. at ¶ 28 (citing

4

42 U.S.C. § 3610).  The Secretary determined that reasonable cause existed to believe that Defendants violated the FHA.  *Id*.  On July 11, 2023, the Secretary issued a "Charge of Discrimination" charging Defendants with engaging in unlawful sex discrimination and retaliation.  *Id*. at ¶ 28 (citing 42 U.S.C. § 3610(g)(2)(A)).  McGinnis elected to have the claims asserted in the HUD Charge of Discrimination resolved in a civil action on July 28, 2023.  *Id*. at ¶ 29 (citing 42 U.S.C. § 3612(a)).  Thereafter, the Secretary of HUD authorized the Attorney General to commence a civil action.  *Id*. at ¶ 30 (citing 42 U.S.C. § 3612(o)).

On August 23, 2023, Plaintiff initiated this action against Defendants.  *Id*.  Plaintiff alleges Defendants have denied housing or otherwise made housing unavailable to McGinnis because of sex, in violation of 42 U.S.C. § 3604(a).  *Id*. at ¶ 32.  Plaintiff claims Defendants discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b).  *Id*.  Plaintiff asserts Defendants made statements with respect to the rental of a dwelling that indicate a preference, limitation, or discrimination based on sex in violation of 42 U.S.C. § 3604(c).  *Id*.  Plaintiff also alleges Defendants coerced, intimidated, threatened, or interfered with a person in the exercise or enjoyment of, or on account of her having exercised or enjoyed, rights granted or protected by 42 U.S.C. § 3604, in violation of 42 U.S.C. § 3617.  *Id*.  Plaintiff's complaint seeks both injunctive relief and monetary damages on behalf of McGinnis.  *Id*. at 8-9.

The Court set an initial scheduling conference for November 20, 2023.  (Doc. 3).  On October 26, 2023, Plaintiff filed an *ex parte* application to continue the scheduling conference as Plaintiff had yet to effectuate service of the complaint.  (Doc. 5).  Counsel for Plaintiff declared he had contacted Defendant Salazar Jr. by phone, and Defendant Salazar Jr. indicated that he wanted time to obtain counsel.  *Id*.  On December 15, 2023, Plaintiff filed executed proofs of service of summons as to Defendants Javier Salazar Jr. and Javier Salazar Sr.; and on February 9, 2024, Plaintiff filed an executed proof of service of summons as to Defendant Ricardo Covarrubias.  (Docs. 9-10, 13).

On March 6, 2024, the Undersigned noted Defendants had failed to timely respond to the complaint.  (Doc. 14) (citing Fed. R. Civ. P. 12(a)(1)(A)).  The Undersigned ordered Plaintiff to

file entries of default within seven (7) days of entry of the order.  (Doc. 14).  On March 11, 2024, Plaintiff filed a status report to apprise the Court of recent conversations between counsel and Defendants.  (Doc. 16).  Plaintiff stated Defendant Salazar Jr. had spoken by phone with counsel for Plaintiff several times and the parties held a teleconference on March 4, 2024.  *Id*. at 2. During the conference, Plaintiff explained to Defendants that they were in default.  *Id*.  According to counsel for Plaintiff, Defendant Covarrubias asserted he intended to obtain counsel but needed 90 days to do so.  *Id*.  Further, Defendants reportedly informed counsel that they would file with the Court a request for more time or a stay to obtain counsel and respond to the complaint.  *Id*.

On March 12, 2024, Plaintiff filed a request for entry of default as to all Defendants. (Doc. 19).  The following day, the Clerk of the Court entered defaults against all Defendants. (Docs. 20-22).  Plaintiff filed the instant motion for default judgment against Defendants on April 12, 2024.  (Doc. 24).  Defendants did not timely oppose or respond to the motion.

A hearing on Plaintiff's motion was held on May 22, 2024.  (Docs. 25-26).  Counsel Roshni Shikari and Robert Fuentes appeared on behalf of Plaintiff via videoconference.  (Doc. 25).  Defendants appeared in-person (marking their first appearance in this action).  *Id*.  Anna Covarrubias, a relative of Defendant Covarrubias, also attended the hearing and appeared to assist Defendants with English-to-Spanish interpretation.  *Id*.  Defendants confirmed their addresses and were advised of the procedural posture of the case including the entries of default against them. (Doc. 26).  The Undersigned admonished Defendants of their duty as pro se parties to review and comply with the Court's Local Rules unless and until an attorney appeared on their behalf.  *Id*. The Undersigned heard argument on Plaintiff's motion for default judgment and directed Plaintiff to file supplemental briefing in further support of their motion regarding the relief requested within 14 days.  *Id*.

At the conclusion of the hearing, Defendants requested additional time to retain counsel. *Id*.  The Undersigned ordered that within 14 days, Defendants shall file either a notice of attorney appearance on their behalf, a notice of intent to proceed pro se, or a notice of request demonstrating good cause for additional time within which to retain an attorney.  *Id*.  The Undersigned admonished Defendants that, if they sought additional time, the Undersigned would

grant an extension and expect that "you move" on the additional time granted and "not delay any further." (*Id.* tr. 10:55:15a.m. – 10:55:29a.m.).

On June 3, 2024, Defendants timely filed a motion for an extension of time to obtain counsel. (Doc. 27).  On June 6, 2024, the Undersigned granted Defendants' motion for an extension of time to obtain counsel. (Doc. 29).  The Undersigned found Defendants had carelessly abdicated their duties under federal law and the Court's local rules and had been generously afforded more than ample time to seek out and retain counsel. *Id.* at 2-3.  However, the Undersigned provided Defendants an additional 21 days to file either (1) notices of appearance of counsel on their behalf, or (2) an opposition to Plaintiff's pending motion for default judgment. *Id.* at 3.  The Undersigned forewarned Defendants that the Court would not entertain any further requests for extensions of time to retain counsel. *Id.*  Further, the Undersigned warned Defendants that the Court would construe their failure to timely oppose Plaintiff's motion for default judgment as a non-opposition. *Id.* (citing Local Rule 230(c)).

On June 27, 2024, Defendants filed a second motion for an extension of time to obtain counsel. (Doc. 31).  Defendants claimed they had located an attorney and had an appointment with Wade Law Group on June 26, 2024, for the law group to inquire more about their case. *Id.*  Defendants requested "additional time for our attorney to study the case and for the hearing to be with adequate information from all parties." *Id.*

As of the date of this order, no counsel has filed a notice of appearance on behalf of any of the Defendants and Defendant have not filed any opposition to Plaintiff's motion for default judgment.

**Legal Standard**

As a general rule, "default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 20160 (quoting *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Under Rule 55 of the Federal Rules of Civil Procedure, default judgment is a two-step process. *See Eitel*, 782 F.2d at 1471.  Prior to the entry of default judgment, there must be an entry of default. *See* Fed. R. Civ. P. 55.  Upon entry of default, the factual allegations of the complaint,

1   save for those concerning damages, are deemed to have been admitted by the defaulting party.

2   Fed. R. Civ. P. 8(b)(6); *see Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

3        Allegations regarding damages are not taken as true and must be independently proven.

4   *Geddes*, 559 F.2d at 560.  In addition, "facts which are not established by the pleadings of the

5   prevailing party, or claims which are not well-pleaded, are not binding and cannot support the

6   judgment."  *Alan Neuman Prods. V. Albrights*, 862 F.2d 1388, 1392 (9th Cir. 1988) (quoting

7   *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *see DirecTV, Inc. v. Hoa Huynh*, 503

8   F.3d 847, 854 (9th Cir. 2007) (allegations that do no more than "parrot" the elements of a claim

9   not deemed admitted).

10        A district court has discretion to grant or deny a motion for default judgment.  *Aldabe v.*

11   *Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d

12   915, 917 (9th Cir. 1987) ("Rule 55 gives the court considerable leeway as to what it may require

13   as a prerequisite to the entry of a default judgment.").  The Ninth Circuit has set out seven factors

14   to be considered by courts in reviewing a motion for default judgment: "(1) the possibility of

15   prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim (3) the sufficiency of the

16   complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning

17   material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy

18   underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  *Eitel*, 782

19   F.2d at 1471–72.  In general, entry of default judgment is not appropriate where the second and

20   third factors weigh against plaintiff.  *See Mnatsakanyan v. Goldsmith & Hull APC*, No. CV 12–

21   4358 MMM (PLAx),2013 WL 10155707, *10 (C.D. Cal. May 14, 2013) ("The fact that factors

22   two and three weigh against the entry of default judgment is particularly significant, as courts

23   often treat these as the most important factors.") (citing cases).

24        "If the court determines that the allegations in the complaint are sufficient to establish

25   liability, it must then determine the 'amount and character' of the relief that should be awarded."

26   *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (quoting

27   10A Charles Alan Wright *et al.*, Fed. Prac. and Proc. § 2688, at 63 (3d ed. 1998)).  However,

28   courts may decline to enter default judgment if a party's claim is legally insufficient.  *Cripps v.*

1    *Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *Aldabe*, 616 F.2d at 1092-93

2    ("Given the lack of merit in appellant's substantive claims, we cannot say that the district court

3    abused its discretion in declining to enter a default judgment in favor of appellant").

4    **Discussion**

5         Before it may evaluate the *Eitel* factors to determine whether default judgment should be

6    entered, the Undersigned must first determine whether the Court properly has jurisdiction in this

7    matter.

8    **A. Jurisdiction**

9         Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to

10    that granted by Congress. *United States. v. Summer*, 226 F.3d 1005, 1009 (9th Cir. 2000). Here,

11    the Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 1345, and 42

12    U.S.C. § 3612(o)(1). (Doc. 1 at ¶ 3).

13    **B. Procedural Requirements**

14         "A default judgment may be entered against a minor or incompetent person only if

15    represented by a general guardian, conservator, or other like fiduciary who has appeared." Fed.

16    R. Civ. P. 55. Plaintiff through counsel has submitted a declaration stating upon information and

17    belief that Defendants are neither minors nor incompetent persons requiring special service in

18    accordance with Fed. R. Civ. P. 4(g). (Doc. 24-7 at ¶ 4). Further, counsel asserts upon

19    information and belief that Defendants are not serving with the armed forces of the United States

20    and not entitled to the protections of the Soldier's and Sailor's Civil Relief Act of 1940. *Id.* at ¶¶

21    5-6.

22         As a general rule, the Court considers the adequacy of service of process before evaluating

23    the merits of a motion for default judgment. *J & J Sports Prods., Inc. v. Singh*, No. 1:13-cv-

24    1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); *see Mason v. Genisco*

25    *Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992) (if a party "failed to serve [defendant] in the

26    earlier action, the default judgment is void and has no res judicata effect in this action."). Service

27    of the summons and complaint is the procedure by which a court having venue and jurisdiction of

28    the subject matter of the suit obtains jurisdiction over the person being served. *Mississippi Publ'g*

1    *Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946); *see Direct Mail Specialists, Inc. v. Eclat*

2    *Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have

3    jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P.

4    4.").

5        "Rule 4 is a flexible rule that should be liberally construed so long as a party receives

6    sufficient notice of the complaint." *Direct Mail*, 840 F.2d at 688 (quoting *United Food &*

7    *Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)). However,

8    "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the

9    defendant in the complaint will provide personal jurisdiction.'" *Direct Mail*, 840 F.2d at 688

10   (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)).

11       Under Rule 4(e), an individual may be served by: (1) delivering a copy of the summons

12   and the complaint to that person personally; (2) leaving a copy of each at the individual's

13   dwelling or usual place of abode with someone of suitable age and discretion who resides there;

14   or (3) delivering a copy of each to an agent authorized by appointment or by law to receive

15   service of process. Fed. R. Civ. P. 4(e)(2).

16       Rule 4 also permits service on an individual in accordance with state law. Fed. R. Civ. P.

17   4(e)(1). California law permits substitute service by leaving a copy of the summons and

18   complaint at the defendant's usual place of abode (i.e., dwelling), usual place of business, or

19   usual mailing address (other than a U.S. Postal Service post office box). Cal. Civ. Proc. Code §

20   415.20(b). Copies of the summons and complaint must be left "in the presence of a competent

21   member of the household or a person apparently in charge of [the defendant's] office, place of

22   business, or usual mailing address," and copies must thereafter be mailed to the defendant at the

23   same address where the documents were left. *Id*.

24       The Court shall examine the propriety of service as to each Defendant.

25   **1. Javier Salazar, Jr. and Javier Salazar, Sr.**

26       On November 25, 2023, Plaintiff, through a registered process server, served a copy of the

27   summons and complaint on Defendants Salazar, Jr. and Salazar Sr. by substitute service. (Docs.

28   9 at 2; 10 at 2). The process server left the documents with "John Doe" at 12:12 p.m. at the

10

address, 5410 College Avenue Bakersfield, CA 93306.  *Id*.  The process server declared that summons and complaint were left "in the presence of 'John Doe' a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the person served" and John Doe was informed "of the general nature of the papers."  *Id*.  Copies of the summons and complaint were also mailed by first-class mail, postage prepaid, to the same address on November 27, 2024.  (Docs. 9 at 2, 5; 10 at 2, 5).

Further, it is clear Defendants Salazar, Jr. and Salazar Sr. had notice of this action. Defendant Salazar Jr. represented at the motion hearing that both he and Salazar Sr. reside at 5410 College Avenue.  It appears Defendant Salazar Jr. was made aware of this action as early as October 2023.  (Doc. 5 at 3).  Both Defendants Salazar, Jr. and Salazar Sr. made appearances at the May 22, 2024, hearing on Plaintiff's motion for default judgment and have made subsequent filings to this Court.  (Docs. 25-27, 31).  On this record, the Court finds that service of process on Defendants Salazar, Jr., and Salazar Sr. was proper.

### 2. Ricardo Covarrubias

On February 8, 2024, Plaintiff, through a register process server, personally served upon Defendant Covarrubias a copy of the summons and complaint at 8:49 a.m. at the address, 7452 Blewett Ave., Van Nuys, CA 91406.  (Doc. 13).  Further, it is clear Defendant Covarrubias had notice of this action as he made an appearance at the aforementioned May 22, 2024, hearing, and has made subsequent filings to this Court.  (Docs. 25-27, 31).  On this record, the Court finds that service of process on Defendant Covarrubias was proper.

Based on the foregoing, the Undersigned concludes the Court has jurisdiction over Defendants.

### C. Evaluation of the *Eitel* Factors in Favor of Default Judgment

For the reasons discussed herein, the Undersigned finds that the *Eitel* factors weigh in favor of granting default judgment.

### 1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a

1   default judgment.  *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal.

2   2002).  Generally, where default has been entered against a defendant, a plaintiff has no other

3   means by which to recover against that defendant.  *Id.*

4         Here, Plaintiff would be prejudiced if default judgment were not granted.  Plaintiff filed

5   the complaint against Defendants on August 28, 2023 (Doc. 1), and properly served all

6   Defendants more than six months ago (*supra* 10-11).  Defendants have failed to respond to

7   Plaintiff's complaint.  Thus, the present litigation cannot move forward.  Absent entry of a default

8   judgment, Plaintiff would be deprived of the ability to enforce the FHA claim against Defendants,

9   and aggrieved person McGinnis would be left with no recourse to recover for any harm allegedly

10  caused by Defendants.  *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  Accordingly, this factor

11  weighs in favor of default judgment.

12        **2.   Merits of Plaintiff's Claims and the Sufficiency of the Complaint**

13        The second and third *Eitel* factors call for an analysis of the causes of action.  *Eitel*, 782

14  F.2d at 1471–72; *see Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal.

15  2010) (under an *Eitel* analysis, the second and third factors are often analyzed together);

16  *Mnatsakanyan*, 2013 WL 10155707, at *10 (noting that courts often treat these two factors "as

17  the most important" in an *Eitel* analysis).

18        As discussed above (*supra* 2), Plaintiff brought this action to enforce the provisions of the

19  FHA.  (Doc. 1 at ¶¶ 1, 32).  Specifically, Plaintiff claims "Defendant Salazar Jr. created a hostile

20  housing environment, engaged in quid pro quo sexual harassment, interfered with McGinnis'

21  enjoyment of her home, and retaliated against her for exercising her fair housing rights."  (Doc.

22  24 at 9).  Next, Plaintiff contends Defendant Salazar Sr. failed to correct Defendant Salazar Jr.'s

23  "sexually harassing conduct; despite his knowledge of and ability to correct it, and his assurance

24  to [McGinnis] that he would address it."  *Id.*  Plaintiff asserts Defendant Salazar Sr. retaliated

25  against McGinnis for reporting and opposing Defendant Salazar Jr.'s harassment.  *Id.*

26        Plaintiff also alleges Defendant Covarrubias is vicariously liable for Defendants Salazar

27  Jr. and Salazar Sr.'s conduct.  *Id.*  Plaintiff asserts both Defendants Salazar Jr. and Salazar Sr.

28

1   were Defendant Covarrubias's agents that he engaged to manage and perform maintenance at the

2   Subject Property.  *Id.*   Accordingly, the merits of each of these claims are assessed below.

3                            **A. Defendants Salazar Jr. and Sr.**

4           The FHA prohibits discrimination based on sex in the sale or rental of housing.  *See* 42

5   U.S.C. § 3604.  Federal courts have recognized that sexual harassment is a form of sex

6   discrimination that is prohibited by, and actionable under the FHA.  *Quigley*, 598 F.3d 938, 946

7   (8th Cir. 2010); *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996); *Honce v. Vigil*, 1 F.3d

8   1085, 1089-90 (10th Cir. 1993); *Shellhammer v. Lewallen*, 770 F.2d 167 (6th Cir. 1985); *Beliveau*

9   *v. Caras*, 873 F.Supp. 1393, 1396-97 (C.D. Cal. 1995); *see Hall v. Meadowood Ltd. P'ship*, 7

10  Fed. App'x 687, 689 (9th Cir. 2001) (drawing from Title VII case law to recognize that sexual

11  harassment could give rise to a violation of the FHA); *see also Gamble v. City of Escondido*, 104

12  F.3d 300, 304 (9th Cir. 1997) ("Most courts applying the FHA…have analogized it to Title VII").

13  Where sexual harassment creates a "hostile housing environment" or constitutes "quid pro quo

14  sexual harassment," it is actionable under the FHA.  *United States v. Hurt*, 676 F.3d 649, 654 (8th

15  Cir. 2012) (quoting *Quigley*, 598 F.3d at 946-47).  Accord *Morris v. West Hayden Estates First*

16  *Addition Homeowners Ass'n*, 104 F.4th 1128, 1146 (9th Cir. 2024) ("§ 3604(b) of the FHA

17  prohibits the creation of a hostile housing environment based on 'race, color, religion, sex,

18  familial status, or national origin.'") (citing *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901

19  F.3d 856, 861 (7th Cir. 2018)).

20          Quid pro quo harassment is the "unwelcome request or demand to engage in conduct

21  where submission…either explicitly or implicitly, is made a condition related to" the rental of the

22  plaintiff's home.  *Quigley*, 598 F.3d at 947.  A hostile housing environment claim constitutes

23  unwelcomed sexual harassment that was sufficiently severe or pervasive so as to interfere with or

24  deprive a plaintiff's use or enjoyment of their home.  *Salisbury v. Hickman*, 974 F. Supp. 2d

25  1282, 1290 (E.D. Cal. 2013) (citing *Quigley*, 598 F.3d at 946-47).  Many factors are relevant to a

26  hostile housing environment claim, including "the frequency of the [harassing] conduct; its

27  severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

28

1   whether it unreasonably interferes with the [victim's environment]." *Harris v. Forklift Systems,*

2   *Inc.*, 510 U.S. 17, 23 (1993).

3        Separately, the FHA also makes it unlawful to "coerce, intimidate, threaten, or interfere

4   with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed,

5   or on account of his having aided or encouraged any other person in the exercise or enjoyment of,

6   any right granted or protected by [the Fair Housing Act]."  42 U.S.C. § 3617.  To state a claim for

7   retaliation under the FHA, a plaintiff must allege (1) she engaged in a protected activity, (2) an

8   adverse housing consequence is casually linked to that activity and (3) there was resulting

9   damage.  *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 477 (9th Cir. 1998).

10        Accepting Plaintiff's well-pleaded factual allegations as true, Plaintiff has established that

11   Defendants violated the FHA.  Defendant Salazar Jr. created a hostile housing environment.

12   Defendant Salazar Jr.'s harassment toward McGinnis was severe and pervasive, taking place over

13   *several months* in person, through phone calls, and via text messages.  (Docs. 1 at ¶¶ 12, 18; 24-

14   21; 24-2) (emphasis added).  Specifically, Defendant Salazar Jr. made sexual comments and

15   advances toward McGinnis, touched her without consent, entered the Subject Property and,

16   without the permission of or notice to McGinnis, took digital photographs of pictures of

17   McGinnis and her daughter.  (Doc. 1 at ¶ 12).

18        Defendant Salazar Jr. also engaged in quid pro quo harassment.  While examining the

19   Subject Property's gas line, Defendant Salazar Jr. made sexually harassing comments to

20   McGinnis and reached out to touch her.  *Id*. at ¶ 18.  When McGinnis threatened Defendant

21   Salazar Jr. that she would get a lawyer or report his conduct to the police, Defendant Salazar Jr.

22   "told her if she was not going to be nice to him, he was not going to help her."  *Id*.; *cf. United*

23   *States v. Wygul*, No. 1:14-cv-2880-JDB-EGB, 2016 WL 4126583, at *9 (W.D. Tenn. Aug. 2,

24   2016) ("A reasonable jury could find that Defendant's oral statements [demanding nude pictures

25   in lieu of rent] expressed a limitation and/or discrimination based upon sex or an intention to

26   make such limitation or discrimination in violation of § 3604(c)."); *West v. DJ Mortg., LLC*, 164

27   F. Supp. 3d 1393, 1400 (N.D. Ga. 2016) (concluding plaintiff adequately pled an implicit quid

28   pro quo threat where she described multiple instances of defendant ignoring repair requests after

1   plaintiff rejected his advances); *Grieger v. Sheets*, No. 87-C-6567, 1989 WL 38707, at *4-5 (N.D.

2   Ill. Apr. 10, 1989) ("quid pro quo" claim survived summary judgment where landlord refused to

3   make repairs after tenant rejected his explicit demands for sex).

4       Another instance of quid pro quo harassment occurred when Defendant Salazar Jr. told

5   McGinnis that he would not make her pay rent if she had sex with him.  (Doc. 1 at ¶ 12).

6   Additionally, McGinnis was denied her security deposit as Defendant Salazar Jr. "refused to mail

7   it to her and told her she would have to come to his house to get it." (Doc. 1 at ¶ 23).  Defendant

8   Salazar's refusal to provide McGinnis her security deposit unless she came to his house, after

9   months of sustained sexual harassment, also qualifies as another instance of quid pro quo

10  harassment.  *See Quigley*, 598 F.3d at 948 (finding quid pro quo harassment occurred when the

11  tenant inquired about the likelihood of receiving her deposit back, the landlord "fluttered his hand

12  against [the tenant's] stomach and said 'My eagle eyes have not seen everything yet.'").

13      The Undersigned finds Defendant Salazar Sr.'s alleged conduct violated the FHA.  In

14  February 2019, Defendant Salazar Sr. was informed of his son's harassment and Defendant

15  Salazar Sr. told McGinnis that he would address Defendant Salazar Jr.'s behavior.  (Doc. 1 at ¶

16  14).  Despite Defendant Salazar Sr.'s assurance, Defendant Salazar Jr. continued to harass

17  McGinnis.  *Id*.  The duty not to discriminate in housing conditions encompasses the duty not to

18  permit known harassment.  *Wetzel*, 901 F.3d at 864.  Defendant Salazar Sr., as a manager of the

19  Subject Property (Doc. 1 at ¶ 9), had an opportunity to stop Defendant Salazar Jr.'s harassment.

20  Defendant Salazar Sr.'s failure to stop his son's harassment constitutes a breach of his duty to

21  McGinnis and a violation of the FHA.

22      Defendants Salazar Jr. and Salazar Sr. also engaged in retaliation against McGinnis in

23  violation of the FHA.  "Exercising one's 'right to be free from sexual harassment' can constitute a

24  protected activity that is covered by the FHA." *Iula v. Voos*, No. 23-cv-2277 JLS (AHG), 2023

25  WL 8845461, at *4 (S.D. Cal. Dec. 21, 2023) (citing *Mariano v. Villa*, No. 5:16-CV-03467-EJD,

26  2017 WL 2669995, at *3 (N.D. Cal. Jun. 20, 2017)).  First, Defendants Salazar Jr. and Salazar Sr.

27  failed to fix the Subject Property's gas leak following McGinnis' complaints about Defendant

28  Salazar Jr.'s behavior.  *See* (Doc. 1 at ¶¶ 18-20).  After a month without heat or a dryer, McGinnis

15

1    was forced to leave the Subject Property.  *Id*. at ¶ 21.  The Undersigned finds Defendants Salazar

2    Jr. and Salazar Sr.'s failure to address the gas leak, amounted to a constructive eviction of

3    McGinnis and retaliation under the FHA.  *See United States v. Morgan*, No. CV 407-125, 2010

4    WL 11537561, at *3 (S.D. Ga. Mar. 30, 2010) (finding adverse actions against female tenants

5    when they refused sexual propositions could rise to the level of an eviction or constructive

6    eviction and a violation of 42 U.S.C. § 3604(a)).

7          Second, Defendants Salazar Jr. and Salazar Sr. retaliated against McGinnis by preventing

8    her from removing all of her belongings from the residence.  As noted above (*supra* 4), on or

9    around April 2. 2019, Defendants Salazar Jr. and Salazar Sr. changed the locks of the Subject

10   Property and put a padlock on the fence, preventing McGinnis from collecting the last of her

11   belongings.  (Doc. 1 at ¶ 22).  The Undersigned notes these acts, in response to McGinnis

12   exercising her right to be free from Defendant Salazar Jr.'s harassment, qualify as retaliation

13   under the FHA.

**B. Defendant Ricardo Covarrubias**

15         The Undersigned finds Defendant Ricardo Covarrubias is vicariously liable for

16   Defendants Salazar Jr. and Sr.'s actions and inaction.  It is "well established" that the FHA

17   provides for vicarious liability as such an action is, "in effect, a tort action."  *Meyer v. Holley*, 537

18   U.S. 280, 285 (2003).  Vicarious liability necessitates an underlying agency relationship.  "The

19   question whether an agency relationship exists for purposes of the [FHA] is determined under

20   federal law, not state law."  *Harris v. Itzhaki*, 183 F.3d 1043, 1054 (9th Cir. 1999).  Courts have

21   looked to the Restatement Second of Agency ("Restatement") for guidance on agency principles.

22   *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 755 (1989) (citing *Meritor Sav. Bank,*

23   *FSB v. Vinson*, 477 U.S. 57, 72 (1986)).

24         A principal is vicariously liable when their agent or employee acts within the scope of

25   their employment or when they are aided by the agency relationship in committing the act.

26   Restatement §§ 219(1)-(2); *see West*, 164 F. Supp at 1355 ("While sexual harassment committed

27   by an agent is typically not considered within the scope of his authority, there is an exception to

28   this rule.  A principal may be vicariously liable where the agent was aided in accomplishing the

tort by the existence of the agency relation."); *see also Boswell v. Gumaytay*, No. 2:07-cv-135-WKW, 2009 WL 1515872, at *3 (M.D. Ala, June 1, 2009).

Here, Defendants Salazar Jr. and Sr.'s conduct was aided by their agency relationship or employment relationship with Defendant Ricardo Covarrubias. Defendant Ricardo Covarrubias employed Defendants Salazar Jr. and Sr. to manage the Subject Property. (Doc. 1 at ¶ 9). Because of this employment, Defendant Salazar Jr. had unfettered access to harass McGinnis in person, through phone calls, and via text messages. *Id*. at ¶ 12; 24-1; 24-2. Indeed, Defendant Salazar Jr.'s position allowed him to enter, without permission, McGinnis' residence to take digital photographs of printed pictures of McGinnis and her daughter. *Id*. at ¶ 12. Defendants Salazar Jr. and Sr.'s positions allowed them to retaliate against McGinnis by not fixing the gas leak and preventing her from removing her belongings from the Subject Property. Thus, the Undersigned finds Defendant Ricardo Covarrubias is vicariously liable for the FHA violations of his agents.

Plaintiff has adequately alleged that Defendants violated the FHA, and thus, the second and third *Eitel* factors favor default judgment.

**3.  The Sum of Money at Stake in the Action**

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. The amount at stake must not be disproportionate to the harm alleged. *See U.S. E.E.O.C v. Elite Wireless Grp., Inc.* No. 2:19-cv-02187-MCE-CKD, 2024 WL 913837, at *5 (E.D Cal. Mar. 4, 2024), *F&R adopted* 2024 WL 1765044 (Apr. 24, 2024). Default judgment is generally disfavored when the sum of money at stake is either too large or unreasonable in light of a defendant's actions. Generally, courts have found that this factor presents no barrier to default judgment even when millions of dollars were at stake, as long as the potential damages were proportional to the harm alleged. *Global Commodities Trading Group, Inc., et al. v. Beneficio De Arroz Choloma, S.A., et al.*, No. 2:16-cv-1045-TLN-CKD, 2022 WL 1439497, at *5 (E.D. Cal. May 6, 2022) (citations omitted), *F&R adopted*, 2022 WL 2818658 (Jul. 19, 2022).

1      The Undersigned finds McGinnis has sufficiently alleged $2,650 in economic damages.

2  (Doc. 24-2 at ¶ 4).  The Undersigned also finds that Plaintiff is entitled to compensatory damage

3  for McGinnis' emotional distress.  "Emotional distress is often the most significant injury

4  incurred as a result of illegal housing discrimination."  *United States v. M. Westland Co.*, No. CV

5  93-4149 AWT, 1995 U.S. Dist. LEXIS 22466, at *7 (C.D. Cal. Oct. 24, 1995).  Damages are

6  available under the FHA for any unusual level of anxiety, embarrassment, or humiliation suffered

7  by plaintiffs as a result of a defendant's discriminatory actions.  *Pac. Shores Props., LLC v. City*

8  *of Newport Beach*, 730 F.3d 1142, 1172 (9th Cir. 2013); *see Banai v. Sec'y of HUD*, 102 F.3d

9  1203, 1207 (11th Cir. 1997) (damages clearly available under the FHA for "anger, embarrassment

10  and emotional distress" suffered by spurned tenant); *Mairs v. Gilbreath*, No. CV 01-9981 ABC

11  (BQRx), 2002 WL 34272404, at *2 (C.D. Cal. Oct. 10, 2002) ("Because the default established

12  that Defendant violated the FHA, Plaintiff is entitled to compensatory damages.") (citing *United*

13  *States v. Hayward*, 36 F.3d 832, 840 (9th Cir. 1994)).

14      Here, McGinnis, in her complaint and declaration, has demonstrated she is entitled to a

15  compensatory award of emotional distress damages.  As discussed above (*supra* 4), Defendant

16  Salazar Jr.'s harassment affected her sleep, parenting, relationships, made her feel ashamed,

17  "violated," and caused her to avoid being in her own home.  (Doc. 24-2).  Defendant Salazar Jr.'s

18  harassment was severe, consistent, and pervasive, taking place over several months, in person,

19  through phone calls, and via text messages.  (Docs. 1 at ¶ 12; 24-1; 24-2).  Additionally,

20  Defendant Salazar Jr. "physically assaulted [McGinnis] twice, once touching her thigh without

21  consent, and on another occasion, grabbing her genital area."  (Doc. 28 at 3-4) (citing Doc. 1 at ¶

22  12).  A victim's unrefuted attestations constitutes a sufficient basis on which to award

23  compensatory damages for emotional pain and suffering.  *See Chalmers v. City of Los Angeles*,

24  762 F.2d 753, 761 (9th Cir.1985). Therefore, Plaintiff is entitled to emotional distress damages on

25  behalf of McGinnis.

26      Plaintiff is seeking monetary damages in the amount of $45,000 to McGinnis.  (Doc. 24 at

27  2).  Plaintiff asserts an award of $45,000 in compensatory damages is consistent with relief

28  awarded in similar matters.  (Docs. 24 at 11-12; 28 at 4-5).  The Undersigned notes that Plaintiff's

1    cited cases all involved jury awards, rather than a motion for default judgment.  *Cf. Project*

2    *Sentinel v. Komar*, No. 19-cv-00708-ADA-EPG, 2021 WL 2284462 (E.D. Cal. Jun. 4, 2021)

3    (order adopting findings and recommendations granting default judgment in part finding in favor

4    of plaintiff for violations of the FHA and Fair Employment and Housing Act and awarding

5    $33,812.67 in compensatory damages) (amended default issued on July 20, 2021).  However,

6    Plaintiff's reliance on cases involving jury awards is warranted.

7         Due to the nature of default judgments, the appropriate amount of damages for emotional

8    distress is not always clear.  "District courts in this circuit noting the dearth of Ninth Circuit case

9    law on how to evaluate the amount of damages claimed for emotional distress in the default

10   judgment context, have adopted the approach used by courts in the Second Circuit."  *ACF 2006*

11   *Corp. v. Law Offices of Michael J. Libman APC*, No. CV 19-2920-DMG (JCx), 2020 WL

12   7038384, at *5 (C.D. Cal. Oct. 7, 2020) (citing *Brantley v. Boyd*, No. C 07-6139 MMC, 2013 WL

13   3766911, at *8 (N.D. Cal. Jul. 16, 2013) (collecting cases)).  When a plaintiff's declarations and

14   exhibits regarding damages are reasonably detailed, and defendants have declined to appear in the

15   case, the court has discretion to make a determination of damages without an evidentiary hearing.

16   *Hernandez v. Madrigal*, No. CV S-09-0413 MCE GGH, 2011 WL 6936364, at *3 (E.D. Cal. Dec.

17   29, 2011), *F&R adopted*, 2012 WL 13035385 (Jan. 30, 2012).  One way to make such a

18   determination is to compare the damages sought in default judgment to jury awards in similar

19   cases.  *Brantley*, 2013 WL 3766911, at *8.

20        Plaintiff's request for $45,000 in compensatory damages appears to be generally above the

21   average jury award granted in actions involving the FHA.  *United States v. Ables*, No. 18-cv-

22   01249-JDB (W.D. Tenn. Dec. 9, 2022) (jury awarded compensatory damages to six aggrieved

23   persons ranging from $500 to $7,500); *Quigley*, 598 F.3d at 943 (jury awarded $13,685 in

24   compensatory damages to a single plaintiff); *Macias v. Lange*, No. 14cv2763-GPC(JMA), 2017

25   WL 2445516, at *1 (S.D. Cal. Jun. 6, 2017) (jury awarded $35,320 in compensatory damages to a

26   single plaintiff); *United States v. Peterson*, No. 09-cv-10333-JAC-DAS (E.D. Mich. Aug. 6,

27   2010) (jury awarded compensatory damages to six aggrieved persons ranging from $1,435 to

28   $15,525); *Fair Housing Council v. Penasquitos Casablanca Owner's Ass'n*, No. 05-cv-00072-

1  LAB-CAB, 2007 WL 627973, at *1 (S.D. Cal. Feb. 21, 2007) (jury awarded $10,000 in

2  compensatory damages to a single plaintiff); *United States v. Veal*, 365 F. Supp. 2d 1034, 1040

3  n.3 (W.D. Mo. 2004) (jury awarded compensatory damages to eleven aggrieved persons in the

4  total amount of $47,804.  However, Plaintiff's citation to a recent jury award in a sexual

5  harassment housing case within the District of Massachusetts is persuasive.  (Doc. 28 at 4).

6      In *United States v. McCarthy*, No. 21-cv-11300-DLC (D. Mass. May 17, 2024), a jury

7  reviewed evidence of sexual harassment, similar to this instant action (*supra* 14-16), and awarded

8  compensatory damages to seven aggrieved persons ranging from $10,000 to $300,000.  Five of

9  those aggrieved persons were provided over $100,000 each in compensatory damages.  (Doc. 28-

10  1 at 2-5, 7).  Therefore, the Undersigned finds Plaintiff's request for $45,000 in compensatory

11  damages for emotional distress is proportionate to the harm caused by Defendants.

12      Separately, Plaintiff requests punitive damages against Defendants as part of their $45,000

13  monetary request.  (Docs. 1 at ¶ 37; 28 at 5).  Plaintiff argues the Court has the authority to award

14  punitive damages in a default judgment.  (Doc. 28 at 5-6).  This district has awarded punitive

15  damages in default judgments, including in sexual harassment civil rights cases.  *See Elite*

16  *Wireless Grp.,* 2024 WL 913837, at *5; *U.S. E.E.O.C. v. Zoria Farms, Inc.*, No. 1:13-cv-01544-

17  DAD-SKO, 2016 WL 8677142, at *19 (E.D. Cal. May 13, 2016) *F&R adopted*, 2016 WL

18  11662114 (July 22, 2016).  Courts have also awarded punitive damages in default judgments

19  involving the FHA.  *E.g., Fair Hous. Of Marin v. Combs*, No. C 97-1247 MJJ, 2000 WL 365029,

20  at *6 (N.D. Cal. Mar. 29, 2000); *Hous. Rights Ctr. v. Snow*, No. CV 05-4644 SGJ (JTLx), 2007

21  WL 91148, at *7 (C.D. Cal. Jan. 3, 2007); *Fair Hous. Ctr. of Cent. Ind., Inc. v. Smitley*, No. 1:16-

22  cv-880-WTL-DML, 2018 WL 3237860, at *4 (S.D. Ind. Jul. 3, 2018); *Stokes v. Center*, No. 98-

23  cv-70639-DT, 2000 WL 246594, at *2 (E.D. Mich. Jan. 28, 2000).  Therefore, Plaintiff's request

24  for punitive damages through a default judgment is appropriate.

25      Punitive damages may be assessed in an FHA case "when a defendant's conduct is

26  motivated by evil motive or intent, or when it involves reckless or callous indifference to the

27  federally protected rights of others."  *Fair Hous. v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002);

28  *Sw. Fair Hous. Council v. WG Scottsdale LLC*, No. 22-16345, 2023 WL 6820681, at *2 (9th Cir.

1    Oct. 17, 2023).  Punitive damages may be warranted if the defendant knew he was violating the

2    law or perceived a risk that its conduct would violate the law.  *Koslstad v. Am. Dental Ass'n*, 527

3    U.S. 526, 535-39 (1999); *Holland v. Related Cos., Inc.*, No. 15-cv-03220-JSW, 2017 WL

4    3086104, at *5-6 (N.D. Cal. July 20, 2017) (applying *Kolstad* to FHA claim on summary

5    judgment).

6         Plaintiff claims Defendant Salazar Jr.'s conduct was sufficiently egregious to support an

7    inference of evil motive or intent.  (Doc. 28 at 7).  The Undersigned agrees.  As discussed at

8    length (*supra* 2-4), Defendant Salazar Jr. harassed McGinnis for months despite her repeatedly

9    telling him that his conduct was unwelcome.  The record demonstrates punitive damages against

10   Defendant Salazar Jr. are appropriate as his outrageous conduct toward McGinnis illustrates an

11   "utter disdain and disregard" for McGinnis' "right to be free from unwanted sexual contact."

12   *E.E.O.C. v. Sunfire Glass, Inc.*, No. CV-08-1784-PHX-LOA, 2009 WL 976495, at *12 (D. Ariz.

13   Apr. 10, 2009) (citations omitted).

14        Punitive damages are also warranted against Defendant Salazar Sr. as he acted with

15   reckless or callous indifference to McGinnis' federal rights.  Again, as discussed at length (*supra*

16   3), Defendant Salazar Sr. was informed of his son's conduct and asked to address his behavior.

17   Defendant Salazar Sr. told McGinnis that he would address his son's behavior, which creates an

18   inference that he at least "perceived a risk" that his son's conduct was illegal and needed to be

19   addressed.  Further, Defendant Salazar Sr. participated in retaliating against McGinnis by not

20   addressing the gas leak and preventing her from collecting the last of her belongings.  *Supra*. 4.

21        Plaintiff also requests punitive damages against Defendant Ricardo Covarrubias.  (Doc. 28

22   at 9-10).  Plaintiff notes the Ninth Circuit has not addressed vicarious liability for punitive

23   damages under the FHA.  *Id*. at 9, n.2.  Plaintiff argues the Court should adopt the Third Circuit's

24   reasoning in *Alexander v. Riga*, 208 F.3d 419, 432–33 (3d Cir. 2000), that a property owner can

25   be vicariously liable for punitive damages incurred via discriminatory conduct of his agent,

26   subject to only a narrow exception where the owner can show he made a good-faith effort to

27   prevent discrimination.  (Doc. 28 at 9).  However, Plaintiff acknowledges that other circuits have

28   arrived at different outcomes regarding vicarious liability for punitive damages.  *Id*. at 9, n. 2

1    (citing *City of Chicago v. Matchmaker Real Est. Sales Ctr., Inc.*, 982 F.2d 1086, 1096 (7th Cir.

2    1992) ("A principal is liable for punitive damages for the discriminatory acts of her agent only if

3    she knew of or ratified the acts.")).

4          With no controlling precedent, the Undersigned is not inclined to recommend punitive

5    damages against Defendant Ricardo Covarrubias for his vicarious liability.  Instead, the

6    Undersigned finds that any punitive damages to be issued against Defendants Salazar Jr. and Sr.,

7    paired with the compensatory damages to be awarded against all Defendants (*supra* 19-20),

8    would in effect amount to the $45,000 requested.  *See* (Docs. 28-1; 28-2; 28-3) (examples of jury

9    awards for punitive damages in FHA cases).

10         Accordingly, the money sought by Plaintiff is proportionate to the harm caused by

11   Defendants, and this factor weighs in favor of granting default judgment.

12   **4.   The Possibility of a Dispute Concerning Material Facts**

13         "[A]llegations in a well-pleaded complaint are taken as true following the clerk's entry of

14   default."  *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005).

15   Defendants have not answered the complaint and repeatedly have stalled and refused to comply

16   with the Undersigned's orders to either retain and file notices of appearance for attorneys on

17   behalf of Defendants, or litigate Plaintiff's motion for default judgment pro se.  Since Plaintiff's

18   factual allegations are presumed true in this context and Defendants failed to move to set aside

19   the default, no factual dispute exists that would preclude the entry of default judgment.  Thus, this

20   factor weighs in favor of default judgment.

21   **5.   Whether the Default was Due to Excusable Neglect**

22         Due process requires that interested parties be given notice of the pendency of the action

23   and be afforded an opportunity to present their objections before a final judgment is rendered.

24   *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  Upon review of the

25   record before the Court, there is clear indication that the default was not the result of excusable

26   neglect.  The record indicates that as early as October 2023, Defendant Salazar Jr. was aware of

27   this action against him.  (Docs. 5 at 3; 16 at 2).  Defendants were properly served with the

28   complaint on December 15, 2023, and February 9, 2024.  (Docs. 9-10, 13).  Defendants engaged

with Plaintiff for a teleconference on March 4, 2024, and were informed that they were in default. (Doc. 16 at 2).

The instant motion was filed on April 12, 2024. (Doc. 24). Defendants failed to file a timely opposition and respond to Plaintiff's allegations. Instead, Defendants appeared for the first time in this action at the May 22, 2024, motion hearing. (Docs. 25-26). At the hearing, Defendants reiterated their previously expressed interest in retaining counsel. (Doc. 26). The Undersigned admonished Defendants of their duty as pro se parties to review and comply with the Court's Local Rules and within 14 days to file a notice of attorney appearances on their behalf, notice of intent to proceed prose, or a notice of request demonstrating good cause for additional time within with to retain an attorney. *Id*. On June 6, 2024, the Undersigned granted Defendants an additional 21 days to obtain counsel or file an opposition to Plaintiff's motion for default judgment. (Doc. 29 at 3). The Undersigned forewarned Defendants that the Court would not entertain any further requests for extensions of time to retain counsel. *Id*. at 3. Thereafter, Defendants filed an additional request for time to obtain counsel disregarding the Undersigned's warning. (Doc. 31).

As of the date of this order – some three months after the motion hearing and the Undersigned's unequivocal admonishment that Defendants were obligated to participate in this litigation – Defendants have filed neither notices of attorney appearance or oppositions to Plaintiff's motion or any answer to the complaint. Accordingly, this factor weighs in favor of granting default judgment. And for the same reasons, the Court deny as moot Defendants' request for an indefinite extension of time within which to retain counsel. (Doc. 31).

### 6.  The Strong Policy Favoring a Decision on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Defendants' failure to adequately answer Plaintiff's complaints and/or appropriately respond to the Court's orders and Plaintiff's pleadings make a decision on the merits "impractical if not impossible." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Accordingly, this factor does not weigh against default judgment.

1   For the foregoing, the Undersigned finds that the *Eitel* factors favor the entry of default

2   judgment against Defendants.  Therefore, the Undersigned will recommend that the Court grant

3   Plaintiff's motion for default judgment.

4   **D. Relief**

5   Having determined that entry of default judgment is appropriate, the Undersigned must

6   now consider Plaintiff's requested relief.  As noted above (*supra*), the Undersigned finds

7   Plaintiff's request for $45,000 in compensatory damages against Defendants and punitive

8   damages against Defendants Salazar Jr. and Salazar Sr. reasonable.  Therefore, the Undersigned

9   would recommend compensatory damages against all Defendants jointly and severally in the

10   amount of $30,000, punitive damages against Defendant Salazar Jr. in the amount of $12,500, and

11   punitive damages against Defendant Salazar Sr. in the amount of $2,500.

12   The Undersigned turns to Plaintiff's request for injunctive relief.  A plaintiff may seek

13   injunctive relief under the FHA "as the court deems appropriate."  *See* 42 U.S.C. §§ 3612(o)(3),

14   3613(c)(1).  "Where a fair housing violation has occurred, a district court has broad and flexible

15   equitable powers to fashion a remedy that will fully correct past wrongs."  *S. Cal. Hous. Rights.*

16   *Ctr. v. Krug*, 564 F. Supp. 2d 1138, 1145 (C.D. Cal. 2007) (citing *Atkins v. Robinson*, 545 F.

17   Supp. 852, 889 (E.D. Va. 1982), *judgment aff'd*, 733 F.2d 318 (4th Cir. 1984)). "Injunctive relief

18   should be structured to achieve the twin goals of insuring that the [FHA] is not violated in the

19   future and removing any lingering effects of past discrimination."  *Id*. (quoting *Marable v.*

20   *Walker*, 704 F.2d 1219, 1221 (11th Cir. 1983)); *see Snow*, 2007 WL 91148, at *3-4 (granting

21   injunctive relief in connection with default judgment under the FHA and FEHA).

22   Plaintiff requests that the Count enter a permanent injunction against Defendants from

23   violating the FHA.  (Doc. 24 at 15).  Plaintiff requests Defendant Salazar Jr.:

24   "be permanently enjoined from directly or indirectly performing any property

25   management or maintenance responsibilities at any residential property; purposefully or
     knowingly contacting or communicating either directly or indirectly with McGinnis; and

26   entering any rental property owned by [Defendant Ricardo] Covarrubias or managed by
     [Defendant] Salazar Sr. for any reason, other than any property that is the residence of any

27   Defendant."

28

24

1    *Id*. at 15-16.  Plaintiff asks the Court to require all Defendants to attend a training on the

2    requirements of the FHA.  *Id*. at 16.  Separately, Plaintiff requests the Court require Defendant

3    Ricardo Covarrubias to:

4          "adopt a written policy against sexual harassment, including a formal complaint
           procedure, for all rental properties he owns; ensure that all his agents who will be
5          performing any duties related to his residential rental properties are familiar with the
           requirements of the [FHA] and post an 'Equal Housing Opportunity' sign in any rental
6          office he or any of his agents may use."

7

8    *Id*. at 16.  The Undersigned finds Plaintiff's enumerated request for injunctive relief (Doc 24 at

9    15-16), does "not differ in kind from, or exceed in amount, what is demanded in the pleadings."

10   Fed. R. Civ. P. 54(c).  Plaintiff's requests arguably fall within Plaintiff's catchall request for

11   injunctive relief within its complaint.  *See* (Doc. 1 at ¶ 36).  The Undersigned finds Plaintiff

12   requests that all Defendants attend a training on the FHA and its specific requests for Ricardo

13   Covarrubias are appropriate.  *E.g.*, *Snow*, 2007 WL 91148 at *3-5 (injunction included ordering

14   defendants not to violate the FHA, to undergo yearly fair house training, to maintain fair housing

15   sign).  Next, the Undersigned will address Plaintiff's requests for permanent injunction.

16          Generally, a party seeking a permanent injunction must satisfy a four-part test: "(1) that it

17   has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages,

18   are inadequate to compensate for that injury; (3) that, considering the balance of hardships

19   between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public

20   interest would not be disserved by a permanent injunction."  *Arizona Dream Act Coal v. Brewer*,

21   855 F.3d 957, 977 (9th Cir. 2017) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139,

22   141 (2010)); *see eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("The decision to

23   grant or deny permanent injunctive relief is an act of equitable discretion by the district court,

24   reviewable on appeal for abuse of discretion.").

25          The Ninth Circuit has held that for permanent injunctions under the FHA, the first element

26   is presumed to be satisfied.  *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d

27   814, 827 (9th Cir. 2001) ("The standard requirements for equitable relief need not be satisfied

28   when an injunction is sought to prevent the violation of a federal statute which specifically

provides for injunctive relief" rather "where a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation.").  Additionally, the Central District of California has determined that a violation of the Fair Housing Act, in itself, is enough to obtain injunctive relief.  *See Inland Mediation Bd. V. City of Pomona*, 158 F. Supp. 2d 1120, 1162 (C.D. Cal. 2001) ("Where injunctive relief is expressly authorized by statute, proof that the defendant violated such statute is sufficient to support an injunction remedying those violations" and thus when defendants are "adjudged guilty of fair housing and anti-discrimination violations, Plaintiffs have provided evidence sufficient to support a grant of injunctive relief.").

To the extent Plaintiff must prove a violation of the FHA to receive an injunction (*see id.*), it has done so.  *Supra*. 13-17.  The Undersigned will also address the Ninth Circuit's version of the four-part test for a permanent injunction.  *Silver Sage Partners, Ltd*, 251 F.3d at 827.

First, if there is the possibility of future wrongful conduct, a legal remedy is inadequate.  *Orantes—Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990).  As discussed at length, Defendant Salazar Jr.'s harassment was severe and pervasive, beginning when McGinnis first moved into the Subject Property, persisting for months, and ending only when she was forced to leave.  Civil rights statutes protect not only the litigant but also the public at large.  *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (rejecting the claim that a civil rights action for damages is nothing more than a private tort suit and noting that a civil rights plaintiff seeks to vindicate important civil and constitutional rights).  Based on Defendant Salazar Jr.'s conduct, Defendant Salazar Sr.'s inaction, and Defendant Ricardo Covarrubias' lack of oversight, the Undersigned finds there is a strong possibility that Defendant Salazar Jr. may continue to engage in sexual harassment of female tenants.  Absent an injunction, it is unclear whether monetary damages alone are enough to ensure that Defendants will not engage in similar unlawful conduct in the future.

Next, the Undersigned finds there is a strong public interest in ending sexual harassment in the landlord-tenant relationship.  The purpose of the FHA is to "provide, within constitutional limitations, for fair housing throughout the United States."  42 U.S.C. § 3601; *see Price v. Pelka*,

690 F.2d 98, 101 (6th Cir. 1982) ("The eradication of housing discrimination is a policy that Congress considered to be of the highest priority.") (citing *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 211 (1972)).

As to the balance of hardships, the Undersigned finds Plaintiff's request to enjoin Defendants from violating the FHA is warranted.  (Doc. 24 at 15).  Certainly, Defendants will suffer no harm if they are enjoined from violating the FHA.  Likewise, Plaintiff's request Defendant Salazar Jr. be enjoined from contacting or communicating either directly or indirectly with McGinnis is also appropriate.  *Id*. at 16.  Defendant Salazar Jr. will suffer no harm if he is enjoined from contacting McGinnis.  Therefore, the Undersigned will recommend the Court adopt these permanent injunctions against Defendants.

Separately, Plaintiff has requested that Defendant Salazar Jr. be permanently enjoined from directly or indirectly performing any property management or maintenance and entering any rental property owned by Defendant Ricardo Covarrubias or managed by Defendant Salazar Sr. for any reason, other than property that is the residence of any Defendant.  *Id*. at 15-16.  In essence, Plaintiff asks the Court that Defendant Salazar Jr. be permanently barred from working in his profession.

An injunction must be tailored to remedy the specific harm alleged.  *Lamb-Weston Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991).  In support of this request to permanently bar Defendant Salazar Jr. from his profession, Plaintiff identifies three district court cases where defendants were permanently enjoined from directly or indirectly performing property management responsibilities.  (Doc. 28 at 10).  The Undersigned notes these permanent enjoinments occurred after years of multiple instances of FHA violations.  *See* (Doc. 24-4) (*United States v. Ables*, No. 18-cv-01249-JDB, granting a permanent injunction against the management of residential rental properties following sexual harassment of five tenants over seven years); (Doc. 28-4) (*United States v. Jackson*, No. 3:99-cv-556BN, granting a permanent injunction against the management of residential rental properties following repeated acts of sexual harassment against 21 female tenants over multiple years); *see United States v. Encore Management*, No. 2:14-cv-28101, Doc. 116 (S.D. W. Va. Mar. 20, 2017) (granting a permanent

1   injunction against the management of residential rental properties following repeated acts of

2   sexual harassment against multiple tenants).

3         The Undersigned finds Plaintiff's request is overbroad.  The claims brought by Plaintiff

4   were sexual harassment claims against a female tenant.  Enjoining Defendant Salazar Jr. from

5   contact with male tenants goes beyond the specific harm suffered by McGinnis.  *E.g.*, *Macias*,

6   2017 WL 2445516, at *10.  Next, the injunction sought by Plaintiff is overbroad as to time.

7   Beyond citing other district court cases that "[t]he United States has obtained this relief with

8   respect to other defendants in housing discrimination cases…numerous times," Plaintiff offers no

9   analysis or discussion why an unlimited injunction, requiring the Court to oversee the injunction

10  for the lifetime of Defendant Salazar Jr., is necessary.[1]  *See* (Doc. 24 at 15-16).  Accordingly, the

11  Undersigned will recommend that the Court issue a narrower permanent injunction against

12  Defendant Salazar Jr.

13  **<u>Conclusion and Recommendation</u>**

14        For the reasons set forth above, the Undersigned HEREBY ORDERS that Defendants'

15  motion for extension of time to obtain counsel (Doc. 31), is DENIED as moot.

16        Further, the Undersigned RECOMMENDS the following:

17    1.  That Plaintiff's motion for default judgment (Doc. 24) be GRANTED;

18    2.  That Defendants pay $45,000 to Angela McGinnis within 30 days of entry of this order.

19       Payment will be made in the form of a cashier's check or money order made payable to

20       Angela McGinnis and mailed to her counsel via Priority Mail: Jina Kim, Greater

21       Bakersfield Legal Assistance, Inc., 615 California Ave., Bakersfield, CA 93304;

22    3.  That Javier Salazar Sr., Juvenal Salazar ("Salazar Jr."), and Ricardo Covarrubias be

23       permanently enjoined from violating the Fair Housing Act, 42 U.S.C. § 3601 et seq.;

24    4.  That Defendant Salazar Jr. be permanently enjoined from:

25       a.  Purposely or knowingly contacting or communicating with, either directly or

26          indirectly, Angela McGinnis; and

27

28       [1] Paradoxically, Plaintiff asks the Court to bar Defendant Salazar Jr. from his profession but then asks that he be required to attend a training on the requirements of the FHA.

   b.  Entering any rental property owned by Covarrubias or managed by Salazar Sr. for any

       reason, other than any property that is the residence of any Defendant

5. That all Defendants are required to attend a training on the requirements of the Fair

   Housing Act, and shall certify they have done so by filing an affidavit and proof of

   completion of the training with the Court within 60 days of entry of this order;

6. That Defendant Ricardo Covarrubias be required to:

   a.  Adopt a written policy against sexual harassment, including a formal complaint

       procedure, for all rental properties he owns and shall file a copy of the policy with the

       Court within 60 days of entry of this order;

   b.  Ensure that all his agents who will be performing any duties related to his residential

       rental properties are familiar with the requirements of the Fair Housing Act; and

   c.  Post an "Equal Housing Opportunity" sign in any rental office he or any of his agents

       may use; and

7. The Clerk of Court be directed to close this case.

   These findings and recommendations will be submitted to the United States district judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 21 days after

being served with these findings and recommendations, the parties may file written objections

with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings

and Recommendations."  The parties are advised that failure to file objections within the specified

time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th

Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

   Dated:   **August 19, 2024**                    _____

                                                    UNITED STATES MAGISTRATE JUDGE